**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-00910-CMA-NYW

PATRICK R. MCDONALD,

      Plaintiff,

v.

Sabine Oil & Gas Corporation,

      Defendant.
_____

**ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**
_____

      This matter is before the court on the Parties' Joint Motion for Entry of Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information ("Motion" or "Stipulation and Proposed Order")  filed on June 17, 2015 [#28].  The Motion was referred to the undersigned Magistrate Judge for consideration by Order of Reference dated June 2, 2015 [#21] and Memorandum dated June 18, 2015 [#29].  Upon consideration of the Parties' Stipulation and Proposed Order, upon a finding a good cause, the court hereby ORDERS:

**I.  STIPULATION AND PROPOSED ORDER**

      This Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information shall be the governing document by which the Parties and the Court manage the production of electronically stored information ("ESI") in this action.  The Parties shall take reasonable steps to comply with this Stipulation and Proposed Order. This Stipulation and Proposed Order does not constitute an agreement concerning any cost-sharing by the Parties concerning the production of ESI.  Neither Party has agreed

to share costs for the other Party's production of ESI, and each Party reserves their rights, if any, concerning such cost-sharing.

The Parties state that this Stipulation and Proposed Order is based on facts and circumstances as they are currently known to each Party, that the discovery process is iterative, and that additions and modifications to this Stipulation and Proposed Order may become necessary as more information becomes known to the Parties.  Nothing in this Stipulation and Proposed Order will be interpreted to require disclosure of documents or information protected from disclosure by the attorney-client privilege, work-product doctrine or any other applicable privilege or immunity.  All Parties preserve such privileges and there is no intent through either this Stipulation and Proposed Order or the production of documents or information hereunder to waive or weaken such privileges.

**A.    ESI Retention and Identification Protocol**

**1.    Custodians:**

The Parties will take steps to preserve potentially responsive ESI from custodians who are listed in each party's Rule 26(a) disclosures, to the extent such individuals have documents that are in the Parties' possession, custody or control.  The Parties will, at a minimum, perform searches of such custodians' documents (including emails and other ESI), to the extent such individuals have documents that are in the Parties' possession, custody or control, using agreed-upon search terms as described below.  The Parties also reserve their rights to seek to have searches performed and documents produced from additional custodians' documents.

**2. Description of Information Systems:**

The Parties will also take steps to preserve potentially relevant ESI and other documents in their possession, custody, or control.  In addition to the custodian files described above, these materials would include, but are not limited to, Outlook, Word, Excel, PowerPoint and other electronic documents contained on central network drives or folders; emails; and hard copy documents.  The Parties will identify such documents to each other and search such documents using agreed upon search terms and other criteria as discussed below.

**3. Keyword Search Terms:**

Within seven (7) days of entry of this Stipulation and Order, the Parties shall exchange lists of keyword search terms and other criteria that they propose to use to search for responsive documents.  The Parties agree to limit such terms to those likely to yield information relevant to any Party's claims and defenses in this action.  The Parties agree to meet and confer (by telephone) to discuss the use of agreed-upon keyword search terms.  Within seven (7) days of meeting and conferring to discuss the use of agreed-upon key word searches, the Parties shall exchange any proposed edits and/or additions to the proposed lists of search terms.  The Parties shall endeavor to come to an agreement regarding proposed keyword search terms.  If the Parties are unable to do so, they may present any issues for resolution by the court in accordance with Local Rule 7.1, and the court's practice guidelines.

**B.    ESI Production Protocol**

The Parties will produce any ESI to each other in digital form according to the specifications in **Exhibit A** below.

3

**C.      Privilege Logs**

The Parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming.  To limit the cost of a privilege review and make document production more efficient, the Parties agree to use the protocols described below with respect to handling responsive documents that may include privileged information:

Unless otherwise ordered by the court, the Parties need not identify, on any privilege or work product log in response to document requests, privileged documents constituting:

1.      communications between any Party, and outside counsel for that Party that (a) were for the purposes of litigating this case or concern the allegations made by the Plaintiff in this action; (b) post-date the filing of this action; and (c) were not disclosed to anyone who, at the time of the disclosure, was a third party to the attorney-client relationship; and

2.      communications between attorneys or their agents and litigation experts or consultants.

Neither Party will treat the failure to log such documents as a waiver of any privilege or protection.

**D.      Inadvertent Production of Documents**

1.      Under Federal Rule of Evidence 502(d), the disclosure of a communication or information covered by the attorney-client privilege or work-product protection does not operate as a waiver of any such privilege or protection as to the disclosed communication or information, nor does it operate as a waiver with

respect to disclosed or undisclosed communications or information concerning the same or similar subject matter.

2.     The Parties are governed by Federal Rule of Civil Procedure 26(b)(5)(B) with respect to claims of privilege and Federal Rule of Evidence 502(b) with respect to inadvertent production of privileged materials.  The Parties will abide by the following procedure in connection with any inadvertent production of privileged materials:

a.     If a producing Party has a good faith belief that a privileged document has been inadvertently produced, it shall notify the receiving Party of the producing Party's claim of privilege within fourteen (14) days after the producing Party actually discovers that such inadvertent production was made.

b.     Upon receipt of any notice claiming privilege with respect to a produced document, all other Parties (regardless of whether they agree with the producing Party's claim of privilege) shall promptly:

1).     Use reasonable efforts to destroy or sequester all copies of the inadvertently produced documents or material in such Parties' possession, custody, or control, and notify the disclosing Party that they have done so; and

2).     Notify the producing Party within fourteen (14) days that they have taken reasonable steps to retrieve and destroy or sequester the inadvertently produced documents or material from other persons, if any, to whom such documents or material have been provided, consistent with Rule 26(b)(5)(B).

   c.  To the extent a receiving Party disputes the producing Party's claim of privilege, the receiving Party shall notify the producing Party of its position within five (5) business days of receiving the producing Party's notice (the "Dispute Notification").  Within five (5) business days of receiving the Dispute Notification, the Parties shall meet and confer in an effort to resolve their disagreement.  If the Parties are unable to resolve their disagreement, the Parties may submit the issue to the Court for a determination, submitting any document(s) in dispute under seal in compliance with Rule 26(b)(5)(B), and any relevant agreements or Court orders.  *See* Fed. R. Evid. 502(d)-(e).

## E. Limitations

Nothing in this Stipulation and Proposed Order shall prohibit a Party from seeking modification of any of its terms either by stipulation or by application to the Court. Should any Party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the Parties will meet and confer to attempt to resolve any dispute before seeking intervention by the Court.

This Stipulation and Proposed Order relates to the general protocol of identifying and producing ESI, and is not otherwise intended to alter the Parties' respective rights and obligations under the Federal Rules of Civil Procedure or this Court's Local Rules.

DATED:  June 23, 2015      BY THE COURT:

           s/ Nina Y. Wang
           United States Magistrate Judge

**EXHIBIT A**
**FORMAT FOR DIGITAL PRODUCTION OF ESI**

Unless the Parties agree otherwise, Electronic Stored Information ("ESI") will be produced in the form in which it is ordinarily maintained or in a form that is reasonably useable.

A.    TIFF Image Files:  ESI should be produced as Group IV, 300 DPI, single-page TIFF images.  File and folder names cannot contain spaces or special characters (including the comma).  All image files must have a unique file name.

Documents that cannot be converted to TIFF (video, audio, applications, etc.) should be produced in native format.  Also, documents that can become unwieldy when converted to TIFF (spreadsheets, databases, source code, large diagrams, etc.) should be produced in native format.  For documents produced natively, create a single page place holder sheet bearing the Bates number, file name and file type of the document being produced.

B.    Text Files:  Each Document produced under this order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page.  Each text file shall be named using the Bates number of the first page of the corresponding production item.

   i.    OCR:  The text for each hard copy document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document.  The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  The Parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

   ii.    ESI:  The text of each ESI item shall be extracted directly from the ESI native file.  To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above.  For contacts and calendars collected and/or processed, user modifiable fields should be extracted and produced as text.

   iii.    Redacted Text:  The text file corresponding to a redacted document may be generated by applying OCR to the redacted TIFF file under the provision above.

   iv.    Foreign Language Text:  The Parties will make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document- including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

C.     Bates Numbering:

      i.     Each TIFF image produced under this order must be assigned a Bates number that must always:  (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

      ii.     If a producing Party skips a Bates number or set of Bates numbers in a production, the producing Party will identify any such gap within 14 days of each production or 14 days after noticing the gap, whichever is later.  The producing Party need not provide a placeholder (e.g., gap sheet, dummy image) within the production.

      iii.     The producing Party will brand all TIFF images with its corresponding Bates number, using a consistent font type and size.   Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

D.     Color:  If a receiving Party finds the black and white version of a Document insufficient, the receiving Party may request that the producing Party provide a color image.  The producing Party will not unreasonably deny a request to provide a color image after the requesting Party demonstrates good cause for requesting a color image. If a producing Party converts a document to color image in response to a request from a receiving Party, the producing Party shall do so in JPEG, TIFF or such other format as agreed with the receiving Party.

E.     Confidentiality Designations:   If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the document.   The confidentiality designation should also be reflected in the "Confidentiality" field.

F.     Load Files:  All productions will be provided with Concordance image and data load files.   The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.   The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

G.     Fields:

      i.     Documents shall be produced with, at a minimum, the following fields regardless of whether the fields may be populated automatically from the native file or created using an automated process: (a) BegBates, (b) EndBates, (c)

BegAttach, (d) EndAttach, (e) Custodian,  (f) NativeFileLink (for ESI only), (g) AttachRange, (h) Confidentiality, (i) RecordType, (j) Redacted, and (h) Textlink.

ii.      The parties shall meet and confer on the provision of additional fields including, but not limited to, e-mail metadata (*e.g.,* To, From, CC, BCC, Subject), date fields (*e.g.*, date created, date sent, date received), time fields (e.g., time created, time sent, time received), author, file name, and file extension.

iii.      ESI shall be processed to reflect the date and time standardized for the UTC/GMT time zone.